**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROL BELAS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:CV-04-505 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| JUNIATA COUNTY SCHOOL DIST. | : | |
| AND THOMAS MUIR, | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

Presently before the Court are Defendants' Motion for Summary Judgment (Doc. No. 31),

Plaintiff's Motion for Partial Summary Judgment (Doc. No. 34), and all responsive papers thereto.

This matter has been fully briefed and is ripe for disposition.  For the reasons discussed below,

Defendant's motion will be granted and Plaintiff's motion will be denied.

I.    **Background**[1]

On August 27, 2001, Defendant Juniata County School District ("School District") hired

Plaintiff Carol Belas as principal of the Monroe, Susquehanna, and Thompsontown-Delaware

Elementary Schools.  Plaintiff was certified by the Commonwealth of Pennsylvania to practice teaching

in multiple areas of education and had reached tenure status within the School District.  Defendant

Thomas Muir is the Superintendent of School of the Juniata County School District and is responsible

for overseeing the work performance of principals in the district.

On November 19, 2001, four staff members reported to Defendant Muir that they had

observed "the plunger part and top of a syringe barrel sticking out of [Plaintiff] Belas' coat pocket."

_____

[1]  The following information was taken from the parties' statements of material undisputed facts
(Docs. No. 32, 36, 48, and 50) unless otherwise indicated.

(Doc. No. 50 ¶ 4.)  On December 3, 2001, Plaintiff was issued a three month job performance review by Defendant Muir.  At the December 5, 2001 meeting to discuss the three month review, Defendant Muir expressed concern about Plaintiff's job performance.  In a December 7, 2001 memorandum, Defendant Muir asked Plaintiff to provide him with an explanation regarding the "hypodermic apparatus" observed in her jacket pocket on October 24, 2001.  (Doc. Nos. 32 ¶ 9 and 50 ¶ 9.) Plaintiff responded by way of memorandum on December 9, 2001.

On January 31, 2002, Defendant Muir met with Plaintiff regarding her job performance.  At this meeting, Defendant Muir issued Plaintiff a "first semester evaluation," wherein he advised Plaintiff that her job performance was unsatisfactory and advised her that she was subject to dismissal.  In this evaluation, Defendant Muir cites in narrative form multiple allegations of "incompetency", "immorality" (i.e. dishonesty), and "willful persistent negligence" on the part of Plaintiff in the course of her tenure as principal.  (Doc. No. 33, Ex. A.)

On February 8, 2002, Defendant Muir met with Plaintiff regarding Plaintiff's job performance. Shortly thereafter, on February 11, 2002, Plaintiff acknowledged receipt of a reprimand by Defendant Muir, citing allegations of retaliation against and harassment of staff members, violation of school laws, and violation of written directives issued by the Superintendent.  (Doc. No. 33, Ex. E.)  On February 11, 2002, Plaintiff received a memorandum advising her that a meeting would be held on February 14, 2002 "to discuss the incidents in your January 31, 2002, unsatisfactory evaluation and your February 8, 2002, reprimand . . . .  You will have the opportunity to respond to the documented incidents during the course of that discussion."  (Doc. No. 33, Ex F.)  Upon request by Plaintiff's counsel, this meeting was rescheduled for February 15, 2002.  (Doc. No. 33, Ex. G.)  In the letter officially rescheduling the

meeting, Defendant Muir states:

> The administration is considering potential disciplinary action against you.  The charges have been provided to you in writing through an unsatisfactory evaluation, reprimand letter, and a warning letter (if additional actions occur, they too will be presented to you during the conference). By way of summary, you are charged with incompetence, with immorality, with not complying with the school laws, rules and regulations, which include federal laws, your contractual obligation with the school district, and the directions of the Superintendent, and with willful persistent negligence.
>
> Specifically, among other actions, you have been tardy to special education meetings, disorganized, inadequately prepared, lack knowledge relative to special education guidelines, protocol and law, have a penchant for inappropriate, questionable, absurd and illegal remarks. Additionally, you follow a pattern of lack of frankness, trustworthiness, credibility and basic honesty.  Further, you have failed to ensure and preserve the health, welfare and safety of students and staff under your supervision. Finally, you have violated school laws, particularly special education laws, and directions of the Superintendent to not contact your staff about comments they have made with respect to you.
>
> You will have the opportunity to respond to these charges during this meeting.

(February 14, 2002 Letter, Doc. No. 33, Ex. G.)

On February 15, 2002, Plaintiff met with Defendant Muir in his office.  At this meeting, Defendant Muir issued Plaintiff a second reprimand, directing Plaintiff to comply with a list of 59 directives and complete 4 mandatory training requirements.[2]  Also at this meeting, Plaintiff submitted an unsigned  memorandum objecting to the rescheduling of the meeting, objecting to the list of directives,

---

[2] Examples from the list of directives include, inter alia: "you may not require the teachers [to] determine whether they are going to be sick the day before their illness in order to convenience your acquisition of substitutes", "you must become better organized", "you must show and exhibit concern for children and personnel", "you must learn the names of your students and staff", "you are not personally to use the childrens' [sic] bathroom. An adult bathroom is located close to your office for your use", and "you must not lie."

and alleging "disparate treatment" by Defendant Muir.  (Doc. No. 49-9 at 9-11.)

On February 22, 2002, Defendant Muir issued Plaintiff a third reprimand, alleging in part that

Plaintiff left confidential student files "scattered" in public view in the elementary school office.  (Doc.

No. 33, Ex. J.)  At this meeting, Defendant Muir also suspended Plaintiff for three days (February 25-

27, 2002) without pay for failing to provide "any compelling information that justifies, defends or

supports [Plaintiff's] actions" as alleged in the First Semester Evaluation, the three reprimand

memorandums, and the "February 15, 2002, disciplinary conference."  (Three day suspension letter,

Doc. No. 46-22.)

On February 26, 2002, Plaintiff, through counsel, appealed the three day suspension,

requesting a hearing thereupon.  By letter dated March 7, 2002, the School District denied Plaintiff

request for an appeal of the three day suspension.  Also on February 26, 2002, Plaintiff sent Defendant

Muir a memorandum identifying alleged instances of disparate treatment.  (Doc. No. 49-9 at 13-14.)

By memorandum dated March 12, 2002, Defendant Muir responded to Plaintiff's allegations.  (Doc.

No. 33, Ex. L.)

Plaintiff received four additional written reprimands during the month of March 2002.  On June

7, 2002, Plaintiff was issued a Second Semester evaluation, again rating her job performance as

unsatisfactory.  (Doc. No. 33, Ex. M.)  Attached to this evaluation was a ten page history of Plaintiff's

alleged performance deficiencies during the spring term.

Ten days later, on or about June 17, 2002, Defendant Muir filed charges with the Juniata

County School Board ("School Board") against Plaintiff seeking termination of her employment.  The

20 page Statement of Charges alleged the following: immorality; incompetency; intemperance; cruelty;

persistent negligence in the performance of duties; willful neglect of duties; persistent and willful violation

of or failure to comply with the school laws; and unsatisfactory performance based upon two

consecutive ratings of her performance that include observations, not less than four months apart, in

which her performance is rated as unsatisfactory.  (Doc. No. 33, Ex. O, ¶ 22.)  The same day, the

School Board voted unanimously to issue a resolution scheduling a termination hearing and authorizing

the hiring of special counsel to represent the board in this matter.  (Doc. No. 33, Ex O.)  The

termination hearing was scheduled for June 27, 2002.  Plaintiff received a copy of the Statement of

Charges and notice of hearing the next day or shortly thereafter.

On June 25, 2002, Defendant Muir met with Plaintiff to "consider what your employment

status and compensation status will be pending your discharge hearing."  (Doc. No. 33 Ex. P.)  At this

meeting, Plaintiff denied the allegations charged against her in the Statement of Charges.  (Doc. No. 50,

¶ 32.)  By memorandum dated June 25, 2002, Defendant Muir suspended Plaintiff without pay,

beginning June 26, 2002, pending the outcome of her termination hearing.  (Doc. No. 33 Ex. Q.)

The termination hearing process consisted of 30 separate hearings over a 14 month period.

The School Board heard testimony from 44 witnesses and examined 210 exhibits offered by

Defendants and 86 exhibits offered by Plaintiff.  (Doc. No. 33, Ex. U.)  Defendant Muir with counsel

represented the School District before the School Board.  Plaintiff was represented by counsel during

the hearings and the School Board provided a stenographer to record each session.  Plaintiff alleges

that Defendant Muir refused to provide her with necessary documents, interjected new allegations not

part of the original statement during the hearings, improperly offered hearsay, fraudulent, and

confidential evidence into the record, and unduly influenced the adjudicating school board outside of the

process.  (Doc. No. 36 ¶¶ 31-41.)

On December 4, 2003, the School Board issued a written decision finding "sufficient evidence to establish at least six of the eight charges brought by the Juniata County school District against [Plaintiff] and recommended that [Plaintiff] be terminated from employment with the [School District]." (Doc. No. 33, Ex U.)  Earlier, on November 24, 2003, the School Board had held a public meeting, wherein the board voted to include five of the six charges against Plaintiff in their filing with the Pennsylvania Department of Education.  This decision and the action of the School Board in terminating Plaintiff's employment was filed with the Pennsylvania Secretary of Education.

Plaintiff appealed the School Board's decision with the Pennsylvania Department of Education. (Doc. No. W.)  Plaintiff submitted briefs to the Department of Education in support of her appeal and presented oral arguments to a hearing examiner designated by the Secretary of Education in the matter. In a 42 page opinion dated August 11, 2005, the Secretary of Education denied Plaintiff's appeal and affirmed her termination.  (Doc. No. 61.)  The record does not indicate whether Plaintiff has appealed this decision to the Pennsylvania Commonwealth Court, pursuant to 24 P.S. § 11-1132 and the Local Agency Law, 2 PA. CONS. STAT. ANN. § 752, et seq.

## II.      Procedural History

On March 8, 2004, Plaintiff filed the instant Complaint, alleging five counts: (1) deprivation of a property right without due process of law in the three-days suspension; (2) refusal to grant "a hearing in her suspension without pay pending the outcome of the hearings on the proposed termination"; (3) failure to afford Plaintiff "a fair trial before an impartial hearing body" prior to terminating her employment; (4) deprivation of her liberty interest in her professional reputation without due process;

and (5) tortious interference with business relations.[3]  (Doc. No. 1.)  Defendants filed two motions for judgment on the pleading, challenging Counts I and V of the Complaint.  (Doc. Nos. 10 and 12.)  By Order dated January 25, 2005, the Court dismissed Count I of the Complaint, but denied Defendant's motion for judgment on the pleading with regard to Count V.  (Doc. No. 23.)  On May 23, 2005, Defendants filed a motion for summary judgment on all four of the remaining counts.  (Doc. No. 31.) On the same day, Plaintiff filed a motion for partial summary judgment, seeking judgment in her favor on Count III of the Complaint.  (Doc. No. 34.)

## III.   Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 249.  The evidence presented must be viewed in the light most favorable to the non-moving party.  Id.  "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other."  Id.  This standard does not change by virtue of cross-motions being presented.  United States v. Hall, 730 F.

---

[3]      Count V is only against Defendant Muir, whereas the remaining counts are against both Defendants.

Supp. 646, 648 (M.D. Pa. 1990).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  <u>Childers v. Joseph</u>, 842 F.2d 689, 694 (3d Cir. 1988).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the non-moving party may not simply sit back and rest on the allegations in the complaint.  Instead, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  The evidence must be viewed in the light most favorable to the non-movant. <u>See</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." <u>Celotex</u>, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).  There must be more than a scintilla of evidence supporting the nonmoving part and more than some metaphysical doubt as to the material facts.  <u>Id.</u> at 252; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

## IV.    <u>Discussion</u>

Plaintiff seeks recovery pursuant to 42 U.S.C. § 1983 for deprivation of property rights and liberty interest without due process.  Plaintiff's Complaint also includes pendent state claims of tortious

interference with current and prospective business relations.  The Court will address each claim in turn.

### A.      Deprivation of Property Rights without Due Process

Plaintiff alleges that she was deprived of property rights in her employment without due process.  An essential principle of due process is that a "deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  <u>Cleveland Bd. of Education v. Loudermill</u>, 470 U.S. 532, 542 (1985) (quoting <u>Mullane v. Central Hanover Bank & Trust Co.,</u> 339 U.S. 306, 313 (1950)).  However, "due process is not a technical conception with a fixed content unrelated to time, place, and circumstances[,]" rather it "is flexible and calls for such procedural protections as the particular situation demands."  <u>Gilbert v. Homar</u>, 520 U.S. 924, 930 (1997) (internal citations removed).  In the case <u>sub judice</u>, Plaintiff argues that she was deprived of her property interest in employment pursuant to a suspension without pay and pursuant to being terminated.  The Court will examine both the pre- and post-deprivation procedures in consideration of Plaintiff's two due process challenges (Counts II and III of the Complaint.)

### 1. PROPERTY INTEREST IN EMPLOYMENT

As an initial matter, the Court must consider whether Plaintiff had a property interest in her employment at the Juniata School District.  In order to have a property interest in one's employment, an individual must "have a legitimate claim of entitlement to it."  <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  Property interests "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law . . . .'"  <u>Loudermill</u>, 470 U.S. at 538 (quoting <u>Roth</u>, 408 U.S. at 577).  An employment agreement may establish a protected property interest under the Fourteenth Amendment if the contract

includes a provision that the state entity can only terminate the employment "for-cause."  <u>Linan-Faye</u>

<u>Const. Co., Inc. v. Hous. Auth. of City of Camden</u>, 49 F.3d 915, 932 (3d Cir. 1995).  Under

Pennsylvania law, school districts may not terminate professional employees, such as Plaintiff, except

for specific enumerated causes.  24 P.S. § 11-1122.  Accordingly, Pennsylvania law gives Plaintiff a

property interest in her former position at Juniata County School District.

Although Plaintiff had property interest in not being terminated from her tenure position, it is

unclear whether Plaintiff also had a property interest in not being suspended.  <u>See</u> <u>Gilbert v. Homar</u>,

520 U.S. 924, 929 (1997) (recognizing that the Supreme Court has "not had occasion to decide

whether the protections of the Due Process Clause extend to discipline of tenured public employees

short of termination[,]" but nevertheless "assum[ing] that the suspension infringed a protected property

interest" because the petitioners did not contest the issue).  <u>But</u> <u>cf.</u> <u>Gniotek v. Philadelphia</u>, 808 F.2d

241, 244 n.5 (3d Cir. 1986) (finding that for police officers, under Pennsylvania law and their collective

bargaining agreement, "suspensions, like dismissals are only proper when for just cause . . .").  Unlike

termination, suspension of a teacher is not statutorily prohibited without cause.  <u>See</u> <u>Kaplan v.</u>

<u>Philadelphia School Dist.</u>, 388 Pa. 213, 217 (1957) (finding that § 11-1124 is limited to suspensions of

staff due to "overstaffing of teachers, curtailment of educational program, or consolidation of schools"

and not suspensions due to "incompetency, unfitness, and a disregard of the responsibility the plaintiff

owed to his profession and the school district.").  However, in the case <u>sub</u> <u>judice</u>, Plaintiff was

suspended without pay pending the result of her termination hearing.[4]  Suspension with intent to

---

[4] Plaintiff's claim concerning her three-day suspension has already been dismissed.  <u>See</u> Order
dated January 25, 2005.  Accordingly, the Court need not determine here whether a three-day

terminate is a _de_ _facto_ termination, and as such, the deprivation occurs on the date the public employee was suspended. Gniotek, 808 F.2d at 243-44 (holding that "before appellants were suspended with intent to dismiss they were entitled to whatever pretermination procedures the Constitution mandates prior to actual dismissal"). This holds especially true in the case at bar, where Plaintiff was suspended without pay for over 18 months prior to her final termination. Accordingly, the Court will examine Plaintiff's claims of due process violations regarding her suspension without pay (Count II) and her final termination (Count III) under the same rubric as a single deprivation.

2.     PRE-DEPRIVATION DUE PROCESS

Due process "fundamentally requires that the individual be given an opportunity for a hearing before she is deprived of her property interest. This principle requires some kind of hearing prior to discharge." Barkauskie v. Indian River School District, 951 F. Supp. 519, 533 (3d Cir. 1996) (emphasis in original) (internal citations removed). The purpose of the pre-termination hearing is to "provide an initial check against mistaken decisions and a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. Id.

Pre-deprivation due process is satisfied if, prior to the deprivation, a public employee is given: (1) written or oral notice of the charges; (2) an adequate explanation of the evidence; and (3) an adequate opportunity to present her side of the story. McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir. 1995). "To require more than this prior to termination would intrude to an unwarranted extent on the

_____

suspension warrants the same due process protections as termination, nor whether the February 22, 2002 meeting held prior to the suspension fulfills the pre-deprivation due process mandated in Loudermill and its progeny.

11

government's interest in quickly removing an unsatisfactory employee." <u>Loudermill</u>, 470 U.S. at 546.

Notice is sufficient if is apprises the employee of the nature of the charges and general evidence against her and if it is timely under the particular circumstances of the case. <u>Gniotek</u>, 808 F.2d at 244 (citing <u>Loudermill</u>, 470 U.S. at 506). Advanced notice is not required, so long as the timing of the notice does not prevent the employee from presenting her side of the story. <u>Id.</u> at 244-45. "The timing and content of notice . . . will depend on appropriate accommodation of the competing interests involved[,]" namely the employer's interest in quickly removing an unsatisfactory employee and the employee's interest in retaining employment. <u>Goss v. Lopez</u>, 419 US. 565, 519 (1975). "Pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee 'the opportunity to determine what facts, in any, within his knowledge might be presented in mitigation of or in denial of the charges.'" <u>McDaniels</u>, 59 F.3d at 457 (quoting <u>Gniotek</u>, 808 F.2d at 244).

The gravamen of Plaintiff's complaint against the processes afforded her prior to her suspension is that the meeting was a sham because Defendant Muir was bias against her and had been engaging in an "all out war of administrative terrorism against [Plaintiff.]" (Doc. No. 50, ¶ 33). Plaintiff does not deny that she was given an opportunity at the meeting to respond to the allegations put before her; rather, she asserts that Defendant Muir did not fairly consider her responses due to his bias. <u>Id.</u> However, Plaintiff is not entitled to an impartial decisionmaker during the pre-deprivation stage. <u>McDaniels</u>, 59 F.3d at 459-61 (finding that "to require that the state ensure an impartial pretermination hearing in every instance would as a practical matter require that termination decisions initially be made by an outside party rather than the employer," a requirement that would be "unduly cumbersome . . .

12

[and] unreasonably invasive for the employee . . .").  Plaintiff was provided an opportunity to redress any improper bias on the part of Defendant Muir during her hearing before the publicly elected members of the School Board, as well as on de novo review with the Pennsylvania Secretary of Education and thereafter in a Commonwealth Court.  See 24 P.S. §§ 11-1127 et seq.; 2 PA. CONS. STAT. ANN. § 752, et seq.

Plaintiff's suspension pending termination followed a protracted series of meetings, official reprimands, and unsatisfactory semester evaluations given to her by the School District's Superintendent, Defendant Muir.  A week before being suspended, Plaintiff was given notice of the termination hearing and a copy of the specific Statement of Charges against her.  The 20 page Statement of Charges provides multiple examples for each charge alleged, with enough specificity as to allow Plaintiff to refute the allegations.  The record abundantly demonstrates Plaintiff's keen awareness of the charges formally lodged against her when on June 25, 2002, Plaintiff met with Defendant Muir to discuss her employment status pending the termination hearing.

The record also abundantly demonstrates that Plaintiff received adequate due process under Loudermill, prior to termination.  Plaintiff received a detailed statement of the charges alleged against her, the presentation of numerous witnesses and exhibits as evidence of these charges, and the opportunity for her, through counsel, to cross-examine the School District's witnesses, rebut its evidence, and present her own.  Further, after deliberating, the School Board issued a written detailed explanation of their findings and the bases for Plaintiff's termination.

Plaintiff alleges that the termination hearing process was a "sham," because: the charges against her were not detailed enough; she lacked access to certain documents until after the School District

13

rested; the use of hearsay evidence; ex parte communications between the School Board and the

School District's attorney; and the restrictions on the length of the post-trial briefs.  (Doc. No. 37.)  As

the Court noted supra, pre-termination hearings may be informal and Plaintiff is not entitled to an

impartial decisionmaker during this stage.  McDaniels, 59 F.3d at 459-61.  Moreover, a publicly

elected School Board of laymen need not conduct their deliberations with the professionalism and

efficiency of the judiciary, so long as the process provided Plaintiff a fair chance to rebut the District's

evidence and present her side of the story.  The fact that the School Board rejected two of the eight

charges demonstrates that it did not function as Defendants' mere puppet.  The hearing before the

School Board adequately provided Plaintiff a fair chance to present her side of the story prior to her

termination.  Accordingly, Plaintiff received all the pre-deprivation due process owed under the United

States Constitution.

        3.        POST-DEPRIVATION DUE PROCESS

Unlike pre-deprivation procedures, a constitutional violation actionable under section 1983

during the post-deprivation period "is not complete when the deprivation occurs; it is not complete

unless and until the State fails to provide due process."  Zinermon, 494 U.S. at 126.  In the case at bar,

therefore, a cause of action for a due process violation does not accrue at Plaintiff's suspension or

termination, rather it accrues when Plaintiff seeks to grieve her deprivation and is denied that

opportunity.

In Dykes v. Southeastern Pa. Trans. Auth., the Third Circuit Court of Appeals struck a due

process challenge brought by a dismissed employee because the employee failed to pursue arbitration

as the fourth level of review of the grievance procedure provided in his bargaining agreement.  68 F.3d

1564, 1571 (3d Cir. 1995).  The court found that "[Plaintiff] could have asked a court of common

pleas to order arbitration pursuant to the collective bargaining agreement, thereby assuring him of the

due process to which he was entitled.  Because he chose not to do so, [he] is unable to prove a

violation of 42 U.S.C. § 1983 . . . ."  Id. at 1572.

In the matter sub judice, Plaintiff appealed her termination to the Secretary of Education for the

Commonwealth of Pennsylvania, pursuant to 24 P.S. § 11-1131.  After hearing arguments and upon a

de novo review of the School Board's decision and the evidence proffered therein, the Secretary of

Education denied Plaintiff's appeal and upheld her dismissal.  (Doc. No. 61.)  In his 42 page opinion,

Secretary Barnes "reviewed the record from below, made his own findings of fact, determined the

credibility of witnesses, the weight of their testimony and any inferences to be drawn therefrom."  Id. at

23.  Plaintiff argues that the Secretary of Education's decision to review the lengthy and voluminous

record produced during the termination hearing, instead of rehearing the entire matter from scratch,

prevented the Secretary's review from being a "true de novo review."  (Doc. No. 51 at 8.)  However,

Plaintiff cites to no case, and the Court finds none, that stand for the proposition that due process

requires the record to be recreated and witnesses to re-testify at every stage of a review process.

Accordingly, the Court finds the Secretary's review adequate due process protection of Plaintiff's

property rights in her employment.

Moreover, pursuant to 24 P.S. § 11-1132 and the Local Agency Law, 2 PA. CONS. STAT.

ANN. § 752, et seq., Plaintiff is entitled to a second de novo review by the state courts.  Under the

Local Agency Law, the state court "may hold a de novo hearing in the event a full and complete record

of the proceedings before the local agency was not made.  Moreover, the court may modify or set

aside an agency decision if it finds violations of the employee's constitutional rights, an error of law, or that necessary findings of fact were not supported by substantial evidence." <u>McDaniels</u>, 59 F.3d at 461 (internal quotations removed)(finding that state court review of a termination is "sufficient process to protect [a public employee's] property rights"); <u>Demko v. Luzerne County Cmty. Coll.</u>, 113 F. Supp. 2d 722, 737 (M.D. Pa. 2000) (finding that the availability of state court review, pursuant to the Local Agency Law, of the College's actions in terminating an administrator, "whether or not [Plaintiff] made use of that review, satisfied the requirements of the due process clause"). Because Plaintiff was provided adequate post-deprivation due process and is currently engaged in the review process guaranteed by state law, the Court finds no violation of Plaintiff's post-termination due process rights.

4.      SUMMARY

Based upon the above, the Court finds, as a matter of law, that Plaintiff was provided adequate due process with regard to her suspension and termination. Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to Counts II and III of the Complaint. For the same reasons as above, the Court will deny Plaintiff's Motion for Partial Summary Judgement.

**B.      Deprivation of Liberty Interest without Due Process**

Plaintiff claims that Defendants deprived her of liberty interest in her professional reputation without due process. A claim for defamation is actionable under 42 U.S.C. § 1983 "only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." <u>Clark v. Township of Falls</u>, 890 F.2d 611, 619 (3d Cir. 1989)(citing <u>Paul v. Davis</u>, 424 U.S. 693 (1976)). Thus, in order to make out a claim for a violation of a liberty interest in reputation, Plaintiff must show a stigma to her reputation plus some accompanying infringement of a

protected right or interest.  Paul, 424 U.S. at 701 (1976) (finding that although not every defamation by a public official will constitute a deprivation of liberty subject to constitutional protection, stigma to reputation, together with an impact on a "tangible interest, such as employment" may require due process protection); Ersek v. Township of Springfield, 102 F.3d 79, 83 n.5 (3d Cir. 1996).  Courts have referred to this as the "reputation plus" or "stigma plus" requirement.  Graham v. City of Philadelphia, 402 F.3d 139, 142 n2 (3d Cir. 2005);  Ersek, 102 F.3d at 83 n.5.  Accordingly, although injury to reputation alone is not a liberty interest protected under the Fourteenth Amendment, stigma to reputation accompanied by a deprivation of present or future employment may be a liberty interest requiring due process protection.[5]  Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984).


Once a plaintiff has shown "reputation plus," she must also show that the provided notice and opportunity to be heard were inadequate to satisfy the requirements of due process.  Thus, individuals must be given an opportunity to refute the charges alleged against them at a "name-clearing" hearing. Graham, 402 F.3d at 144.   In Liotta v. Borough of Springdale, 985 F.2d 119 (3d Cir. 1993), a borough administrator was accused of stealing borough funds.  The borough council held a hearing to determine whether to discipline him, during which the administrator was free to testify and call witnesses.  Following the hearing, the borough council voted to terminate his employment.  In reviewing the defamation claim brought by the administrator against the council members and the borough itself, the Third Circuit found that the hearing provided the administrator a name-clearing forum and was all

---

[5] Plaintiff's lose of property rights in her employment is enough to satisfy the "plus" requirement. Graham, 402 F.3d at 142 n2 (the "plus" is generally termination of employment).

"the process he was due." <u>Litorra</u>, 985 F.2d at 123.  Similarly, in <u>Graham v. City of Philadelphia</u>, the

Third Circuit Court of Appeals found that a "criminal trial, satisfied [Defendant's] due process

obligations and obviated any need for a name-clearing hearing."  402 F.3d at 144.  <u>See</u> <u>also</u> <u>Demko</u>,

113 F. Supp. 2d at 734 (finding that "[a] pre-deprivation hearing that satisfies the requirement of

Loudermill is adequate" for purposes of a name-clearing hearing).

 In the matter <u>sub</u> <u>judice</u>, Plaintiff requested and was given a private termination hearing.  Except

for the initial public hearing, the details of Plaintiff's termination remained private until the initiation of this

case.  (Doc. No. 49-7.)  Nevertheless, Plaintiff points to two instances of defamation by Defendants:

(1) the calling of former employers as witnesses during the termination hearing; and (2) Defendants'

attachment of documents to their answer in the case at bar.  (Doc. No. 51.)  Plaintiff also alleges

unspecific "intentional leaks to the public and educational community . . . ."  (Doc. No. 51 at 12.)

 Plaintiff provides the Court with no explanation as to how the above actions constitute

defamation under Pennsylvania law.  Nor does Plaintiff explain why these actions would not be

afforded judicial or quasi-judicial absolute privilege.  <u>See</u> <u>Binder v. Triangle Publications, Inc</u>., 275

A.2d 53, 56 (Pa. 1971)("[a]ll communications pertinent to any stage of a judicial proceeding are

accorded an absolute privilege which cannot be destroyed by abuse").  <u>See</u> <u>also</u> <u>Overall v. Univ. of</u>

<u>Pa.</u>, 412 F.3d 492 (3d Cir. 2005)(recognizing a quasi-judicial privilege, but limiting it to "proceedings

before federal, state, or local governmental bodies, or proceedings held pursuant to a statute or

administrative regulation," such as Plaintiff's termination hearing).

 Nevertheless, assuming <u>arguendo</u> that these actions would rise to the level of defamation,

Plaintiff was afforded a name clearing hearing and therefore cannot maintain her due process claim.  In

18

light of what has been set forth earlier in this opinion, Plaintiff had an opportunity to confront and rebut

the witnesses and evidence against her, and present her own side of the story.  In fact, during the

hearing, Plaintiff was able to clear her name with regard to some of the charges against her.  (Doc. Nos.

30, Ex. E and 33, Ex. O.)  Accordingly, Plaintiff has not pointed to a violation of her constitutional

rights with regard to her reputation and summary judgement will be granted for Defendants on Plaintiff's

section 1983 claim for defamation (Count IV of the Complaint).

### C.  Tortious Interference with Business Relations

Finally, Plaintiff claims that Defendant Muir tortiously interfered with Plaintiff's present

employment contract and prospective business relations.  In this Commonwealth, "[o]ne who

intentionally and improperly interferes with the performance of a contract . . . between another and a

third person by inducing or otherwise causing the third person not to perform the contract, is subject to

liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform

the contract."  Judge Technical Servs., Inc. v. Clancy, 813 A.2d 879, 887 (Pa. Super. Ct. 2002)

(internal quotations omitted).

In order to sustain a claim for intentional interference with performance of a contract, Plaintiff

must satisfy the following four elements:

> (1) an intentional or improper interfering with a performance of a contract;
> (2) between another and a third person;
> (3) inducing or otherwise causing the third person not to perform the contract; and
> (4) pecuniary loss.

RESTATEMENT (SECOND) OF TORTS § 766.  See Judge Tech. Servs. v. Clancy, 813 A.2d 879, 887

(Pa. Super. Ct. 2002); Maier v. Maretti, 448 Pa. Super. 276, 288 (Pa. Super Ct. 1995).  Critical to

19

the right of recovery under the theory of tortious interference is the existence of a contractual

relationship between Plaintiff and a party other than Defendant Muir.  Killian v. McCulloch, 850 F.

Supp. 1239, 1251 (E.D. Pa. 1994); Nix v. Temple University, 596 A.2d 1132, 1137 (Pa. Super. Ct.

1991).  A corporation cannot tortiously interfere with a contract to which it is a party.  Nix, 596 A.2d

at 1137.  Since a corporation acts through it agents and officers, such agents and officers cannot be

considered third parties when they are acting in their official capacities.  Id.; see also Avins v. Moll, 610

F. Supp. 308, 318 (E.D. Pa. 1984), aff'd, 774 F.2d 1150 (3d Cir. 1985) (holding that the

overwhelming weight of authority is that a corporate officer is not personally liable for tortious

interference).  "The only exception arises if the officer's sole motive in causing the corporation to

breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the

corporation's interest."  Killian, 850 F. Supp. at 1251; see also Avins, 610 F. Supp. at 318.  However,

the mere fact that an employer was acting with allegedly improper motive does not remove their actions

from the scope of their employment.  Emerson Radio Corp. v. Orion Sales, 253 F.3d 159, 173 (3d

Cir. 2001).  See also Obendorfer v. Gitano Group, Inc., 838 F. Supp. 950, 956 (D.N.J. 1993) (in

applying the same tortious interference standard as in Pennsylvania, the New Jersey court found that a

supervisor who sexually harassed and maliciously demoted an employee was acting within the scope of

his employment as her supervisor and therefore a claim for tortious interference with her employment

contract could not stand).

Although Plaintiff alleges multiple malicious actions on the part of Defendant Muir (Doc. No.

50), Plaintiff offers only two pieces of evidence to support her claim: her own testimony that she knew

Defendant Muir was out to get her (Doc. No. 49-2, Belas Deposition at 141); and her own testimony

that Defendant Muir told her to resign (Doc. No. 49-8, Termination Hearing Transcript for September 30, 2003 at 45-46).  Plaintiff also points to Defendant Muir's handling of Plaintiff's discipline, suspension, and termination.  However, even if improperly motivated, all of these above actions fall squarely within the scope of Defendant Muir's employment and were not the actions of a third party to the employment contract.  Even if animus existed, Plaintiff proffers no evidence that Defendant Muir performed any specific acts against her outside of the scope of his duties as her supervisor and the School District's Superintendent.  Accordingly the Court finds no reliable evidence that would enable a reasonable factfinder to find in favor of Plaintiff on this claim.

Similarly, the Court also finds no evidence that would enable a reasonable factfinder to find the elements of tortious interference with prospective contractual relations.  Under Pennsylvania law, a claim for intentional tortious interference with prospective contractual relationships requires that a plaintiff establish the following four elements:

(1) a prospective contractual relation;
(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;
(3) the absence of privilege or justification on the part of the defendant; and
(4) the occasioning of actual damage resulting from the defendant's conduct.

Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 208 (1979).  See Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1392 (3d Cir. 1991).

The term "prospective contractual relation . . . has an evasive quality, eluding precise definition. It is something less than a contractual right, something more than a mere hope."  Thompson Coal Co., 488 Pa. at 209.  The relationship "must be something more than a mere hope or the innate optimism of the salesman."  Glenn v. Point Park College, 441 Pa. 474, 480 (1971).  A plaintiff may recover "when

the jury is satisfied that but for the wrongful acts of the defendant it is reasonably probable that the plaintiff would have effected the sale of the property and received a commission." Myers v. Arcadio, Inc., 180 A.2d 329, 331 (N.J. Super. Ct. 1962); adopted by Glenn v. Point Park College, 441 Pa. 474, 480-81 (1971).

Plaintiff offers no evidence that Defendant Muir communicated with any prospective employers or otherwise affirmatively prevented her from seeking future employment.  Nor does Plaintiff point to any prospective employment which she was unable to gain due to Defendant Muir's personal actions. In fact, Plaintiff testified by affidavit that she was successfully able to find employment in the region since her suspension without pay.  (Doc. No. 49-4.)  Rather, the gravamen of Plaintiff's claim rests on the actions taken by Defendant Muir in connection with her termination and the "taint" such a termination will have on future employment opportunities and possible suspension of teaching certificates.[6]  The Court notes that the specifics of Plaintiff's termination remained private until the institution of the case at bar.  However, even if future employers were privy to Plaintiff's termination, Plaintiff was dismissed by super-majority vote of the School Board, not Defendant Muir's private actions.  The Court finds nothing in the record to support Plaintiff claim for tortious interference with prospective contracts. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's tortious interference claims and dismiss Count V of the Complaint.

---

[6] Plaintiff asserts that the Chief Counsel of the Department of Education is currently conducting a preliminary investigation to determine whether there is probable cause to believe the allegations of misconduct which led to her termination.  (Doc. No. 49-4.)

**V.**     **Order**

**AND NOW**, on this 26th day of August, 2005, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgement (Doc. No. 34) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.  Judgement is hereby entered on all remaining counts of the Complaint in **FAVOR** of Defendants and **AGAINST** Plaintiff.  The Clerk of Court is directed to close the file.


                                                    S/ Yvette Kane
                                            Yvette Kane
                                            United States District Judge


Date: August 26, 2005